FAIRFIELD FINANCIAL MORTGAGE
GROUP, INC., Plaintiff,

v.

James R. LUCA, Eric Forte, David Jacobson, Candice Giaccone, Michael J. Moberg, Moberg & Associates, PLLC, Shaw Mortgage Group, Inc., Shaw Elite, LLC, Simply Elite, LLC, Carlo Dellapina, Medallion Abstract, LLC and BLM Consulting, LLC, Defendants.

No. 06–CV–5962 (JS)(WDW).

United States District Court,
E.D. New York.

Sept. 30, 2008.

Michael A. Haskel, Esq., Leonid Gekhman, Esq., Law Offices of Michael A. Haskel, Mineola, NY, for Plaintiff.

Alan Joseph Reardon, Esq., Burns, Russo, Tamigi & Reardon, LLP, Garden City, NY, Kenneth S. Pelsinger, Esq., Kenneth S. Pelsinger, PC, East Meadow, NY, for Defendants.

## MEMORANDUM AND ORDER

SEYBERT, District Judge:

On October 3, 2006, Fairfield Financial Mortgage Group, Inc., ("Plaintiff" or "Fairfield") filed a Complaint against Defendant James R. Luca ("Luca"). On October 19, 2007, Plaintiff filed an Amended Complaint adding Defendants Eric Forte ("Forte"), David Jacobson ("Jacobson"), Candice Giaccone ("Giaccone"), Michael J. Moberg ("Moberg"), Moberg & Associates, PLLC, Shaw Mortgage Group, Inc. ("Shaw Mortgage"), Shaw Elite, LLC, Simply Elite, LLC, Carlo Dellapina ("Dellapina"), Medallion Abstract, LLC, and BLM Consulting, LLC, (collectively, "Defendants"). Pending before the Court is Defendants Forte, Jacobson, Giaccone, Shaw Mortgage, and BLM Consulting's (hereinafter referred to as the "Moving Defendants") motion to dismiss pursuant to Federal Rules of Civil Procedure 12(b)(1) for lack of subject matter jurisdiction and 12(b)(6) for failure to state a claim upon which

relief can be granted.[1] For the reasons set forth herein, Defendants' motion to dismiss is DENIED in part and GRANTED in part.

## BACKGROUND

The facts of this case are taken from Plaintiff's Amended Complaint and are presumed to be true for purposes of this motion.

Defendants Luca, Jacobson, and Forte began working for Plaintiff in or about April 2005. (Amended Complaint ("Compl.") ¶¶ 18, 23.) The three Defendants worked at Fairfield's office located at 333 Earle Ovington Boulevard, Uniondale, New York ("Uniondale Branch"). (*Id.* ¶¶ 18, 23.) Giaccone, Luca's wife, became an employee of Fairfield sometime thereafter. (*Id.* ¶ 24.)

On January 17, 2006, Fairfield and Luca entered into the Branch Manager Agreement, which required Luca to conduct the Uniondale Branch's operations in a manner that would increase the branch's business, goodwill, and profits, while improving its reputation. (*Id.* ¶¶ 19, 21.) According to the agreement, Luca was to devote all of his time, attention, and ability to working for Fairfield, and Luca would not directly or indirectly engage in any business competing with Fairfield. (*Id.* ¶ 22.)

Moberg and Moberg & Associates, PLLC ("Moberg & Associates") represented Fairfield as attorneys with respect to the closings of Fairfield loans originating from the Uniondale Branch, and acted in this capacity from April 2005 until the branch closed in July 2006. (*Id.* ¶ 25.) Among other things, Moberg and Moberg & Associates prepared documents, conducted closings, ensured all documents

---

1. The instant motion was made by Defendants Eric Forte, David Jacobson, Cadice Giaccone, Shaw Mortgage Group, and BLM Consulting LLC.

were signed by the borrower, and disbursed loan funds. (*Id.* ¶ 25.)

During Luca's employment with Fairfield, Luca, Moberg, and Luca's uncle, Dellapina, created a title abstract company named Medallion Abstract, LLC ("Medallion"). (*Id.* ¶ 26.) Medallion's office is located in the office of Moberg & Associates. (*Id.* ¶ 27.) While employed at Fairfield, Defendants Luca, Giaccone, Jacobson, and Forte referred, or caused to be referred, a substantial portion of the title work from the Uniondale Branch to Medallion. (*Id.* ¶ 28.) Dellapina and Moberg arranged for payments to be made out of Medallion's bank account to Dellapina and Luca. (*Id.* ¶ 29.) Such payments were made to Luca and other Fairfield employees from Dellapina's personal bank account, in which Dellpina deposited payments made to him by Medallion. (*Id.* ¶ 30.) Fairfield was not informed of Luca's financial interest in Medallion. (*Id.* ¶ 31.)

While employed by Fairfield and working in the Uniondale Branch, Defendants Luca, Jacobson, Forte, and Giaccone brokered mortgages for a competitor of Fairfield, Shaw Mortgage Group, Inc. ("Shaw"). (*Id.* ¶ 33.) To do so, Defendants utilized Fairfield's "office space, equipment, furniture, personnel, processes, documents, files, records, customer lists, proprietary and/or confidential information." (*Id.* ¶ 33.) Moberg & Associates, in turn, acted as closing agent and attorneys for the loan. (*Id.* ¶ 34.)

As early as February 2006, Luca formed a branch of Shaw ("Shaw Branch") through Shaw Elite, LLC ("Shaw Elite") and Simply Elite, LLC ("Simply Elite"). (*Id.* ¶ 35.) Shaw Branch operated out of the Fairfield office in Uniondale. (*Id.* ¶ 35.) Luca, with the assistance of Defendants Jacobson and Forte, transferred Fairfield's mortgages to Shaw, solicited mortgage loans on behalf of Shaw while working for Fairfield, financially induced other Fairfield employees to process loan applications on behalf of Shaw, and recruited Fairfield employees to work at the Shaw Branch. (*Id.* ¶¶ 35–36.) The entire process was concealed from Fairfield. (*Id.* ¶ 35.) Luca, Jacobson, and Forte used confidential information belonging to Fairfield, including confidential customer lists, to set up Shaw Branch. (*Id.* ¶ 37.)

In or about July 2006, an unknown individual or individuals, believed to be Luca or an individual under his direction, removed "records, files, documents, customer lists, proprietary information, confidential materials, equipment, and other items" from the Uniondale Branch without Fairfield's permission, and Fairfield's Uniondale Branch closed as a result. (*Id.* ¶ 38.)

Shaw Branch then moved its offices to 2550 Hempstead Turnpike, East Meadow, New York ("East Meadow Building"), and Luca, Jacobson, Forte, and Giaccone were employed and granted authority at the branch. (*Id.* ¶¶ 39–40.) The East Meadow Building was purchased by Simply Elite out of funds earned by Medallion. (*Id.* ¶¶ 41–42.) Defendants Luca and Giaccone then created BLM Consulting, LLC ("BLM") to hold title to the East Meadow Building in order to conceal Luca's ownership interest. (*Id.* ¶ 43.) BLM paid no consideration for title when Simply Elite transferred the property to BLM. (*Id.* ¶ 43.)

Luca was paid $1,321,069.74 over the course of his employment with Fairfield. (*Id.* ¶ 44.)

## DISCUSSION

### I. Standard Of Review

#### A. Rule 12(b)(1)

In considering a motion to dismiss for lack of subject matter jurisdiction pursu-

ant to Rule 12(b)(1), the Court may consider affidavits and other materials beyond the pleadings to resolve jurisdictional questions. *See Robinson v. Gov't of Malaysia*, 269 F.3d 133, 140 n. 6 (2d Cir.2001). Under Rule 12(b)(1), the Court will deem true the factual allegations contained in the complaint. *See Jaghory v. New York State Dep't of Educ.*, 131 F.3d 326, 329 (2d Cir.1997). When, however, there is a question involving federal jurisdiction, such jurisdiction must be shown affirmatively. *See Shipping Fin. Servs. Corp. v. Drakos*, 140 F.3d 129, 131 (2d Cir.1998) (citing *Norton v. Larney*, 266 U.S. 511, 515, 45 S.Ct. 145, 69 L.Ed. 413 (1925)). Accordingly, the court will not draw references favorable to the party asserting jurisdiction. *See id.*

#### B. *Rule 12(b)(6)*

On a motion to dismiss pursuant to Rule 12(b)(6), a plaintiff must satisfy a "flexible 'plausibility standard,'" which obliges a pleader to amplify a claim with some factual allegations in those contexts where such amplification is needed to render the claim plausible." *Iqbal v. Hasty*, 490 F.3d 143, 157–58 (2d Cir.2007). The Complaint "must be enough to raise a right to relief above the speculative level." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 127 S.Ct. 1955, 167 L.Ed.2d 929 (2007). To be clear, on a motion to dismiss, the Court does not require "heightened fact pleading of specifics, but only enough facts to state a claim for relief that is plausible on its face." *Id.* at 1974.

In applying this standard, the district court must accept the factual allegations set forth in the Complaint as true and draw all reasonable inferences in favor of Plaintiff. *See Cleveland v. Caplaw Enter.*, 448 F.3d 518, 521 (2d Cir.2006); *Nechis v. Oxford Health Plans, Inc.*, 421 F.3d 96, 100 (2d Cir.2005).

In deciding a 12(b)(6) motion, the Court is confined to "the allegations contained within the four corners of the complaint." *Pani v. Empire Blue Cross Blue Shield*, 152 F.3d 67, 71 (2d Cir.1998.) Additionally, the Court may examine "any written instrument attached to [the complaint] or any statements or documents incorporated in it by reference" as well as any document on which the complaint relies heavily. *Chambers v. Time Warner, Inc.*, 282 F.3d 147, 152–153 (2d Cir.2002). "Of course, it may also consider matters of which judicial notice may be taken under Fed.R.Evid. 201." *Kramer v. Time Warner, Inc.*, 937 F.2d 767, 773 (2d Cir.1991).

### II. *Defendants' Arguments*

#### A. *Federal Subject Matter Jurisdiction*

Federal district courts have original jurisdiction over civil actions where the amount in controversy is greater than $75,000, excluding interest and costs, and is between "citizens of different states." 28 U.S.C. § 1332(a). A party seeking to invoke jurisdiction of federal court has the "burden of proving that it appears to a 'reasonable probability'" that the claim exceeds the jurisdictional amount. *Tongkook Am., Inc. v. Shipton Sportswear Co.*, 14 F.3d 781, 784 (2d Cir.1994) (quoting *Moore v. Betit*, 511 F.2d 1004, 1006 (2d Cir.1975)). However, there is a rebuttable presumption that the complaint alleges a "good faith representation of the actual amount in controversy." *Scherer v. Equitable Life Assur. Soc'y of the United States*, 347 F.3d 394, 397 (2d Cir.2003) (quoting *Wolde–Meskel v. Vocational Instruction Project Cmty. Servs., Inc.*, 166 F.3d 59, 63 (2d Cir.1999)). A party opposing jurisdiction has the burden of showing "to a reasonable certainty" that the amount in controversy does not exceed $75,000. *Wolde–Meskel*, 166 F.3d at 63. Where there is uncertain-

ty as to the damages sought, "the doubt should be resolved in favor of the Plaintiff's pleadings." *Tongkook*, 14 F.3d at 785.

Defendants argue that the third, seventh, and ninth causes of action do not exceed the jurisdictional requirement for the amount in controversy. Defendants question the damages for breach of fiduciary duty, asserting that the prorated compensation for the alleged period of disloyalty is below the jurisdictional threshold. Defendants also argue that the constructive trust claim does not reach the jurisdictional minimum.

Plaintiff argues that the Amended Complaint seeks $3 million in compensatory damages against Defendants for breach of fiduciary duty, $3 million against Shaw and certain non-movants for unfair competition, and $3 million in punitive damages for each cause of action for which compensatory damages are sought. Plaintiff argues that its allegations regarding damages are entitled to a rebuttable presumption of jurisdiction.

Plaintiff further contends that the Moving Defendants are jointly liable with Luca for the breach of fiduciary duty, as the Moving Defendants assisted Luca in his unfair competition without Fairfield's knowledge. Plaintiff argues that its constructive trust claim also provides an independent basis for satisfying the jurisdictional threshold, as Plaintiff seeks more than just the value of the assets that Plaintiff alleges was improperly used to purchase the East Meadow building. Plaintiff also seeks the value of the constructive trust, i.e., the value of the entire property improperly acquired by Fairfield's assets.

This Court finds that the Moving Defendants have not met the burden of showing "to a legal certainty that the claim is really for less than the jurisdictional amount." *Chase Manhattan Bank, N.A. v. American Nat'l Bank & Trust Co.*, 93 F.3d 1064, 1070 (2d Cir.N.Y.1996). Plaintiff asserts that the Moving Defendants are jointly and severally liable for several claims, and has alleged sufficient damages meeting the jurisdictional threshold against each of the Moving Defendants. Moreover, Plaintiff need not show that each claim separately meets the jurisdictional threshold; "[d]ifferent state claims brought by a single plaintiff may be aggregated for purposes of satisfying the amount-in-controversy requirement." *Colavito v. New York Organ Donor Network, Inc.*, 438 F.3d 214, 221 (2d Cir.2006). Thus, the Moving Defendants have failed to show that Plaintiff did not in good faith believe that "a recovery in excess of [the jurisdictional amount] is reasonably possible.'" *Id.* (quoting *A.F.A. Tours, Inc. v. Whitchurch*, 937 F.2d 82, 88 (2d Cir.1991)).

Moreover, Plaintiff requests punitive damages. "[I]f punitive damages are permitted under the controlling law, the demand for such damages may be included in determining whether the jurisdictional amount is satisfied." *A.F.A. Tours, Inc. v. Whitchurch*, 937 F.2d 82, 87 (2d Cir.1991). Under certain circumstances, "punitive damages . . . are allowed under New York law for torts such as breach of fiduciary duty, fraud, and conversion." *Shanshia Touring, Inc. v. Ferguson*, No. 04–CV–3388, 2006 U.S. Dist. LEXIS 43913, at *29 (S.D.N.Y. June 23, 2006). The question of whether Defendants' action justified a claim for punitive damages cannot be decided at this early stage; for purposes of jurisdiction, the Court finds that Plaintiff has sufficiently alleged claims that may entitle it to both compensatory and punitive damages above the jurisdictional threshold.

### B. Sufficiency Of Breach Of Fiduciary Duty Claim

The Moving Defendants argue that Plaintiff's breach of fiduciary duty claims

against Giaccone, Forte, and Jacobson should be dismissed because Plaintiff fails to show the existence of a fiduciary relationship. According to the Moving Defendants, Giaccone, Forte, and Jacobson were low-level employees who did not have a fiduciary duty to its employer. Plaintiff argues that all employees have a fiduciary duty to their employers, regardless of their rank and the level of their position. The Court agrees.

■■■ "New York law establishes that an employee-employer relationship is fiduciary." *New York v. Joseph L. Balkan, Inc.*, 656 F.Supp. 536, 548 (E.D.N.Y.1987); *see also Benoit v. Commercial Capital Corp.*, No. 03–CV–5328, 2008 WL 3911007, at *9, 2008 U.S. Dist. LEXIS 64905, at *33 (S.D.N.Y. Aug. 25, 2008) ("[I] t is well settled in New York that an employee owes a fiduciary duty to an employer in the performance of the employee's duties."); *Berman v. Sugo LLC*, No. 07–CV–1795, 2008 WL 2414052, at *9, 2008 U.S. Dist. LEXIS 45928, at *28 (S.D.N.Y. June 12, 2008) ("Where it has been established that an employee breached his fiduciary duty by making improper use of the employer's time, facilities or proprietary secrets to create a competing business, 'third parties who have knowingly participated in the breach may be held accountable.' ") (quoting *Schneider Leasing Plus, Inc. v. Stallone*, 172 A.D.2d 739, 569 N.Y.S.2d 126 (N.Y.App.Div.1991)). Plaintiff's Complaint alleges that Jacobson and Forte, while employed with Fairfield, assisted Luca in creating the Shaw Branch and used confidential information belonging to Plaintiff to set up this branch. The Complaint further alleges that Giaconne, Jacobson, and Forte referred, or caused to be referred, substantially all of Fairfield's Union Branch's work to Medallion, and that all three Defendants brokered mortgages for Shaw, a direct competitor of Fairfield. Taking these facts as true, as the Court must at this stage, Plaintiff has stated a claim for breach of fiduciary duty. Accordingly, the Court DENIES the Moving Defendants' motion to dismiss Plaintiff's cause of action for a breach of fiduciary duty.[2]

### C. Constructive Trust Claim Against Luca And BLM

Plaintiff's Amended Complaint seeks to impose a constructive trust over the East Meadow Building. Plaintiff alleges that it made a $30,000 payment to Luca to operate the Uniondale branch. Luca allegedly improperly used the $30,000 to engage in his personal business, and utilized part of that money to obtain the East Meadow Building. The Complaint further alleges that Luca concealed his ownership in the building by causing title to the East Meadow Building to be transferred to BLM, and that BLM took title without paying any consideration.

■■■ "New York law requires that a person establish four elements before a court will impose a constructive trust: (1) a confidential or fiduciary relationship; (2) a promise, express or implied; (3) a transfer of the subject res made in reliance on that

---

**2.** Defendants' reply papers argue that Plaintiff's breach of fiduciary duty claim should also be dismissed because it is duplicative of Plaintiff's breach of contract claim. However, this argument was not raised in Defendants' moving papers, and as such, the Court declines to address it. *See Vilkhu v. City of New York*, No. 06–CV–2095, 2008 WL 1991099, *8, 2008 U.S. Dist. LEXIS 36454, 24–25 (E.D.N.Y. May 5, 2008) ("Because defendants have raised this argument for the first time in their reply papers, I decline to consider it on this motion."); *In re Comverse Tech., Inc.*, No. 06–CV–1849, 2006 WL 3193709, at *5 n. 3, 2006 U.S. Dist. LEXIS 80195, at *15 n. 3 (E.D.N.Y. Nov. 3, 2006) ("Arguments raised for the first time in a reply brief are properly ignored.")

promise; and (4) unjust enrichment." *United States v. Coluccio,* 51 F.3d 337, 340 (2d Cir.1995). The Moving Defendants seek to dismiss this constructive trust claim on the grounds that (1) Plaintiff failed to allege any promise made to it, (2) Plaintiff had no interest in the transfer of the property, (3) Plaintiff has an adequate remedy at law to recover the $30,000 from Luca, (4) the Amended Complaint fails to allege a fiduciary relationship between Plaintiff and BLM, and (5) Plaintiff has failed to prove that Luca used the $30,000 for the purchase of the East Meadow building.

At this early stage in the proceedings, the Court finds that Plaintiff has stated a claim for a constructive trust. Plaintiff alleges that Luca promised not to utilize Fairfield's resources for purposes other than Fairfield's interests. In reliance on that promise, Plaintiff transferred money to Luca for Luca to use to operate the Uniondale Branch. Luca improperly took the money and used it to purchase the East Meadow building for his own benefit. "A constructive trust will be imposed '[w]hen property has been acquired in such circumstances that the holder of the legal title may not in good conscience retain the beneficial interest.'" *Amsellem v. HQZ West 56th Street Associates,* No. 86–CV–4451, 1988 WL 142501, at *4, 1988 U.S. Dist. LEXIS 15005, at *11 (S.D.N.Y. Dec. 30, 1988) (quoting *Brand v. Brand,* 811 F.2d 74, 77 (2d Cir.1987)). Taking Plaintiff's allegations as true, Plaintiff has established a promise and an interest in the *res* building.

Plaintiff need not show that it had a fiduciary relationship with BLM. Although "a bona fide purchaser of property for value in good faith takes free of a constructive trust," *Amsellem,* 1988 WL 142501, at *3, 1988 U.S. Dist. LEXIS 15005, at *12, Plaintiff has alleged that BLM was not a bona fide purchaser because it took title to the building without paying consideration, and it was aware that the building was purchased with Plaintiff's funds. Under such circumstances, Plaintiff has alleged that BLM "hold[s] property 'under such circumstances that in equity and good conscience he ought not to retain it.'" *Smith v. Pali Capital, Inc.,* 2006 WL 3240578, 2006 U.S. Dist. LEXIS 81616 (S.D.N.Y. Nov. 7, 2006) (quoting *Simonds v. Simonds,* 45 N.Y.2d 233, 242, 380 N.E.2d 189, 408 N.Y.S.2d 359 (1978)).

The Court rejects the Moving Defendants' argument that Plaintiff has an adequate remedy at law to recover the $30,000. Plaintiff's Complaint seeks to recover the $30,000, in addition to any purchases made or profits gained from the $30,000, such as the purchase of the East Meadow Building. Finally, the Court rejects Defendants' argument that Plaintiff has not proven that the $30,000 was used to purchase the East Meadow property. Plaintiff need not prove its claims at this stage; it merely needs to allege enough facts to state a claim that is plausible on its face.[3] *See Vaughn v. Air Line Pilots Ass'n, Int'l,* 395 B.R. 520, 540 (E.D.N.Y. 2008) ("Plaintiffs need not prove their case ... to survive a motion to dismiss."); *Capitol Records, Inc. v. City Hall Records, Inc.,* No. 07–CV–6488, 2008 WL 2811481, at *5, 2008 U.S. Dist. LEXIS 55300, at *21–22 (S.D.N.Y. July 18, 2008) ("At the pleading stage, no obligation exists to prove anything, only to allege 'enough

---

**3.** To this end, the Court declines to review Defendants exhibits submitted to prove that Luca did not use the $30,000 to purchase the building. Such exhibits are appropriate at the summary judgment stage, but on a motion to dismiss pursuant to Rule 12(b)(6), the Court may not review papers outside of the Complaint.

facts to state a claim to relief that is plausible on its face.'") (quoting *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 127 S.Ct. 1955, 1974, 167 L.Ed.2d 929 (2007)). Thus, the Court denies the Moving Defendants' motion to dismiss Plaintiff's constructive trust claim.[4]

### D. *Unfair Competition Against Shaw, Shaw Elite, And Simply Elite*

 The Court turns to whether Plaintiff adequately states a claim for unfair competition. "An unfair competition claim involving misappropriation usually concerns the taking and use of the plaintiff's property to compete against the plaintiff's own use of the same property." *Roy Export Co. Establishment v. Columbia Broadcasting System, Inc.*, 672 F.2d 1095, 1105 (2d Cir.1982); *see also Arista Records, Inc. v. MP3Board, Inc.*, No. 00–CV–4630, 2002 WL 1997918, at *12, 2002 U.S. Dist. LEXIS 16165, at *36 (S.D.N.Y. Aug. 28, 2002) ("In New York, an unfair competition claim may be grounded in the appropriation of the exclusive property of the plaintiff by the defendant.") (citing *H.L. Hayden Co. v. Siemens Med. Sys., Inc.*, 879 F.2d 1005, 1025 (2d Cir.1989)).

The Moving Defendants assert that Plaintiff cannot maintain a cause of action for unfair competition because Plaintiff: (1) failed to plead or prove special damages, (2) failed to show that Plaintiff's customer lists qualify for protection under New York law, (3) failed to prove how Shaw gained any commercial advantage over Plaintiff by its access to the alleged confidential information, (4) failed to plead

that it took special steps to protect the confidential information, and (5) failed to prove bad faith on the part of Shaw.[5]

The Court is unaware of any New York federal or state court case that has held that special damages is an element of an unfair competition claim. It appears that Defendants have also failed to find such a case, as they do not provide any legal support for this argument.

 The Court finds that Plaintiff's customer lists may qualify for protection under New York law. Courts in this circuit have held that "where the information taken would not otherwise qualify as a trade secret, the unauthorized physical taking and exploitation of internal company documents for use in a competitor's business constitutes unfair competition." *Innovative Networks v. Satellite Airlines Ticketing Ctrs.*, 871 F.Supp. 709, 730 (S.D.N.Y.1995) (citing to *Ecolab, Inc. v. Paolo*, 753 F.Supp. 1100, 1110 (E.D.N.Y. 1991)); *see also Continental Dynamics Corp. v. Kanter*, 64 A.D.2d 975, 408 N.Y.S.2d 801, 802 (2d Dep't 1978) ("However, where customer lists do not rise to the level of trade secrets, an employee's "physical taking" or "studied copying" of such lists may, nevertheless, form the basis for a cause of action for unfair competition."). Here, Plaintiff alleges that Shaw, acting through Luca, misappropriated Plaintiff's confidential customer list and other internal documents. The unauthorized taking of these documents may support a claim for unfair competition.[6]

---

4. The Court declines to address Defendants' argument that Plaintiff is barred from seeking equitable remedies because it had unclean hands. This argument was raised for the first time in reply papers, and as such, will not be considered by this Court.

5. Notably, Defendants do not cite to any case law to support the majority of their one-sentence arguments.

6. The Court notes that Plaintiff's opposition papers may be overstating the law of unfair competition. Although not clear, Plaintiff's papers appear to state that Plaintiff's unfair competition claim is also based on Defen-

The Court also rejects the Moving Defendants' argument that Plaintiff has not shown that Shaw used the confidential information for its commercial advantage, and that Plaintiff has failed to show that it attempted to protect its confidential information. Plaintiff has alleged that Shaw was a competitor of Fairfield, and that Luca, Jacobson, and Forte utilized Plaintiff's confidential information to set up the Shaw Branch in Uniondale. (*Id.* § 37.) This allegation sufficiently pleads, at this stage, that the Shaw used Plaintiff's confidential information to its commercial advantage. As for Defendants' fourth argument, the requirement that Plaintiff must show that it attempted to protect its confidential information is applicable to a cause of action for trade secrets, and not for an unfair competition claim.

However, the Court finds merit in the Moving Defendants' last argument, that Plaintiff has failed to show that Shaw acted in bad faith. Plaintiff does not respond to the Moving Defendants' argument regarding the necessity of pleading bad faith. "In a common law unfair competition claim under New York law, the plaintiff must show . . . bad faith." *Jeffrey Milstein, Inc. v. Greger, Lawlor, Roth, Inc.,* 58 F.3d 27, 35 (2d Cir.1995); *see also Genesee Brewing Co. v. Stroh Brewing Co.,* 124 F.3d 137, 149 (2d Cir.1997) ("The district court was correct that [plaintiff's] state law claim of unfair competition is not viable without a showing of bad faith.").

Plaintiff does not assert a claim of unfair competition against Luca; Plaintiff's claim is limited to Shaw, Shaw Elite, and Simply Elite. While bad faith on the part of Luca can be inferred from Plaintiff's Complaint, the Complaint lacks any allegations that Shaw was aware of Luca's allegedly improper actions or otherwise acted in bad faith when it used Luca's allegedly improperly acquired information. Although Luca was actively involved in Shaw's Uniondale Branch, the Complaint does not allege that Luca was a corporate officer or had a high-level position at Shaw. The Court is reluctant to impute bad faith on the part of a corporation for the actions of an employee at one of its branches, and there are insufficient allegations to show vicarious liability. Thus, the Court finds that Plaintiff has failed to show that Shaw acted in bad faith, and therefore fails to plead a cause of action for unfair competition. Accordingly, the Court GRANTS Defendants' motion to dismiss Plaintiff's unfair competition claim.

However, a review of the Complaint reveals that Plaintiff's unfair competition claim may not be futile. Thus, Plaintiff is granted an opportunity to amend its Complaint to cure the deficiencies noted in the unfair competition claim. *See Brown v. City of Oneonta,* 235 F.3d 769, 784 (2d Cir.2000) ("On our precedents, plaintiffs are regularly and properly given at least one chance to amend their complaint in response to a district court's finding of inadequacy."); *Valley Disposal v. Central Vt. Solid Waste Management Dist.,* 31

dants' use of Plaintiff's office space and office equipment. Plaintiff states that an unfair competition claim based upon a misappropriation theory will lie . . . when the plaintiff's equipment and resources are unlawfully used. Pl.'s Opp. p. 21. However, while the use of information in confidential customer lists and other internal documents may support a claim for unfair competition, the unlawful use of actual, tangible property, such as office

equipment, does not support an unfair competition claim. *See Frink Am., Inc. v. Champion Rd. Mach. Ltd.,* No. 99–CV–9034, 2000 WL 754945, at *4, 2000 U.S.App. LEXIS 12002, at * 10–11 (2d Cir.N.Y. May 25, 2000) (unpublished decision) ("We have not discovered any other case in which a plaintiff pursued an unfair competition claim under New York law based on the misappropriation of tangible property.")

F.3d 89, 97 (2d Cir.1994) ("[W]e are loath to sustain the dismissal with prejudice of the two counts where the record so obviously reflects the means to remedy the pleading deficiency."). Plaintiff must file its amended complaint within thirty days of the date of this Order.

### III. *Motion For A Default Judgment*

On December 19, 2007, Plaintiff requested an entry of default against Defendants Dellapina, Moberg & Associates PLLC, and Michael J. Moberg. On December 23, 2007, Moberg & Associates and Michael J. Moberg answer the Complaint. On January 25, 2008, the Clerk of the Court noted the default of Carlo Dellapina. On January 30, 2008, Dellapina answered the Complaint.

Federal Rule of Civil Procedure 55 provides, "[w]hen a party against whom a judgment for affirmative relief is sought has failed to plead or otherwise defend as provided by these rules ... the clerk shall enter the party's default." "Following entry of default upon the plaintiff's request, a defendant may seek to set aside the entry of default pursuant to Rule 55(c)." *N.Y. Islanders Hockey Club, L.P. v. Havoc Distrib.*, No. 07–CV–2720, 2008 WL 2439509, at *1, 2008 U.S. Dist. LEXIS 47970, at *3 (E.D.N.Y. June 16, 2008). "[D]efaults are generally disfavored and are reserved for rare occasions, when doubt exists as to whether a default should be granted or vacated, the doubt should be resolved in favor of the defaulting party." *Enron Oil Corp. v. Diakuhara*, 10 F.3d 90, 96 (2d Cir.1993). Because Dellapina, Moberg & Associates PLLC, and Michael J. Moberg have since answered the Complaint, the Court declines to grants a default judgment against these Defendants.

### CONCLUSION

For the reasons stated above, the Moving Defendants' motion to dismiss Plaintiff's Complaint for lack of subject matter jurisdiction is DENIED, and the Moving Defendants' motion to dismiss Plaintiff's breach of fiduciary duty and conversion claims is DENIED. The motion to dismiss Plaintiff's unfair competition claim against Shaw is GRANTED; however, Plaintiff is granted leave to amend this claim within thirty days of this Order. Additionally, Plaintiff's motion for a default judgment is DENIED.

SO ORDERED.